UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

RICADO VELASQUEZ,

Petitioner,

v.

STU SHERMAN,

Respondent.

Case No. 1:15-cv-01288-KES-CDB (HC)

**FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS**[1]

(Doc. 2)

21-Day Deadline

On August 21, 2015, Petitioner Ricardo Velasquez ("Petitioner"), a state prisoner proceeding by counsel, filed a petition for writ of habeas corpus (Doc. 2, "Petition") and a contemporaneously filed motion to hold the petition in abeyance pending exhaustion of certain matters in state court (Doc. 3). The motion to stay was granted and, at Petitioner's later request, lifted by the Court on August 2, 2016. *See* (Docs. 5, 13-14). Following the grant of two extensions of time, at the Court's direction, Respondent filed an answer to the Petition on December 9, 2016. (Doc. 23, 24). On April 5, 2017, after the Court granted three extensions of time, Petitioner filed a reply (Doc. 31) and on April 7, 2017, a traverse (Doc. 33).

On November 8, 2017, the presiding district judge adopted the formerly-referred magistrate judge's findings and recommendations in full, denied the petition, and declined to

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Cal. Local Rule 302(b)(17).

issue a certificate of appealability. (Docs. 34, 40). Petitioner appealed to the Ninth Circuit Court of Appeals, which granted Petitioner's request for a certificate of appealability with respect to two issues implicated in trial counsel's alleged ineffective assistance in the defense of Petitioner. (Docs. 42, 47). Following the appointment of appellate counsel and briefing on Petitioner's appeal, on August 25, 2020, the Ninth Circuit reversed this Court's denial of the petition and remanded for an evidentiary hearing. (Doc. 53).

On remand, the Court granted Petitioner's motions for discovery. (Docs. 74, 83). Following the conduct of discovery and at the parties' request, the Court convened for evidentiary hearings on October 4, 2024 (Doc. 109), February 19, 2025 (Doc. 137), and April 30, 2025 (Doc. 144), during which seven witnesses were sworn and offered testimony. Thereafter, the parties filed post-evidentiary briefings on the merits of the petition. (Doc. 156-58).

For the reasons set forth below, the undersigned recommends that the presiding district judge grant the petition and order Petitioner's release from custody unless Respondent files in this Court a certification that the prosecuting authority will retry Petitioner.

## I. PROCEDURAL AND FACTUAL BACKGROUND

On August 17, 2011, Petitioner was convicted in the Tulare County Superior Court of attempted murder of a peace officer (Cal. Penal Code §§ 664, 187(a), count 1); assault on a peace officer with a semiautomatic firearm (Cal. Penal Code § 245(d)(2), count 2); shooting from a motor vehicle (Cal. Penal Code § 12034(c), count 8); and ten counts of second degree robbery (Cal. Penal Code § 211, counts 3–7, 9–13). *People v. Velasquez*, No. F063254, 2013 WL 173190, at *1 (Cal. Ct. App. Jan. 16, 2013). Allegations were found true that the attempted murder was committed willfully, deliberately, and with premeditation, that Petitioner personally discharged a firearm, and that in committing the robbery counts, he personally used a firearm. *Id.* The trial court sentenced Petitioner to a total prison term of 33 years, plus a consecutive term of 15 years to life. *Id.*

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"), raising a claim of insufficiency of the evidence. (LD[2] 12). On January 16, 2013, the

[2] "LD" refers to the documents lodged in this Court by Respondent. *See* (Doc. 24).

Fifth DCA issued its opinion affirming the judgment. *Velasquez*, 2013 WL 173190, at *1. On February 19, 2013, Petitioner filed a petition for review in the California Supreme Court. (LD 16). The California Supreme Court denied the petition without comment on March 27, 2013. (LD 17).

Petitioner next filed a habeas petition in the Tulare County Superior Court on June 20, 2014, raising six new claims for relief, including that trial counsel rendered ineffective assistance in failing to investigate and call witnesses establishing that the actual shooter was not Petitioner, but instead, Adan Fernandez. (LD 18). The superior court denied the petition on June 26, 2014. (LD 19). On August 18, 2014, Petitioner filed a habeas petition in the Fifth DCA. (LD 20). The petition was summarily denied without comment on October 6, 2014. (LD 21). On December 9, 2014, he filed a habeas petition in the California Supreme Court. (LD 22). The California Supreme Court summarily denied the petition without comment on February 17, 2016. (LD 26).

**A. State Trial Court Proceedings**

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision:[3]

> Shortly after midnight on October 3, 2009, four Hispanic young men entered a bar and grill in Tulare; at least two had guns and all wore masks. Gunshots were fired into the ceiling and the men threatened patrons, pointed guns at their heads and ordered them around. Some patrons dropped to the floor while others ran for cover. One patron ran out through a door and called the police. Inside, the men robbed patrons at gunpoint of wallets, jewelry and other possessions, and took about $1,200 from the cash register. The robbers fled the bar and drove away in two vehicles. Two of them got into a gray sports utility vehicle (SUV), while the other two got into a smaller car.
>
> Tulare Police Officer Justin Rich, who was alone in his marked patrol unit, followed the SUV after he saw it about a half mile from the bar. The SUV was quite a few car lengths ahead, so Rich accelerated to approximately 60 miles per hour to try to catch up and initiate a traffic stop. As Rich was closing in on the SUV, he activated his overhead lights and siren, but the SUV failed to yield and instead accelerated away from Rich, who continued the pursuit.
>
> After going around a curve in the road, the SUV abruptly stopped in the middle of the road. Rich slammed on his brakes to avoid hitting the SUV and came to a stop about 20 feet directly behind it. The

---

[3] These facts are entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015).

> rear passenger-side door of the SUV started to crack open. At the same time, Velasquez stood up inside the SUV and emerged from the open sunroof. Velasquez, who was visible from the waist up, was holding a black handgun, which he pointed directly at Rich. Without hesitation, Velasquez began shooting in a downward direction, firing a total of five or six shots. Rich heard two shots hit the patrol car. As soon as he realized Velasquez was shooting at him, he turned to the left and accelerated into a U-turn. As Rich did so, he continued to look at Velasquez, who was still firing at him. After completing the U-turn, Rich looked back to his left and saw the SUV accelerate away. Rich radioed for assistance as he made another U-turn and resumed the pursuit. Rich, however, smelled smoke and thought the car was shaking, so he stopped while other officers took over the pursuit.
>
> The officers lost sight of the SUV. An hour or so later, officers found the abandoned SUV parked against a fence in a residential area. Inside officers found property belonging to some of the robbery victims, a shotgun, a spent .380–caliber casing, live .380–caliber rounds and live Winchester shotgun shells. At the scene of the shooting at Rich, officers found six expended .45–caliber shells and a black ski mask on the road. The patrol car was hit twice in the front, as shown by bullet holes in the following places: (1) in the front bumper on the bottom part of the grill, just above the license plate; and (2) in the middle of where the hood meets the front portion of the vehicle and closes onto the frame. There was also a bullet hole on the lower portion of the front passenger door. A bullet was found in the engine compartment and bullet fragments were found in the middle area of the lower front passenger door panel.
>
> At around 4:30 that morning, officers found Velasquez hiding in a garbage can with a wad of cash in his pocket and a cell phone in his hand. A loaded .380–caliber automatic pistol was found inside the garbage can. In an interview at the police station, Velasquez admitted he possessed guns and that the robbery was his idea, but denied shooting at Rich. Velasquez refused to name the shooter. Velasquez also said he was driving the SUV when Rich was chasing him, and admitted seeing the patrol car's lights. He did not stop because he panicked and was scared.

*Velasquez*, 2013 WL 173190, at *1-2.

**B. Federal Habeas Court Proceedings**

**1. The Ninth Circuit Court of Appeals' Remand to This Court**

Petitioner appealed this Court's denial of the petition to the Ninth Circuit Court of Appeals. (Docs. 40, 42). In an unpublished memorandum disposition filed August 25, 2020, the panel reversed this Court's denial of habeas relief and remanded for an evidentiary hearing. (Doc. 53); *Velasquez v. Ndoh*, 824 Fed. Appx. 498 (9th Cir. 2020). Relevant here, the Ninth Circuit evaluated Petitioner's claims de novo because it found "the state court's refusal to grant

Petitioner an evidentiary hearing resulted in a decision based upon an unreasonable determination of the facts" 824 Fed. Appx. at 499 (citation omitted). On Petitioner's ineffective assistance of counsel claim, the Ninth Circuit noted that, "[i]f, as Petitioner alleges, trial counsel decided not to investigate Fernandez's role in the shooting solely because Fernandez was dead, that decision was not objectively reasonable" under *Strickland v. Washington*. *Id.* at 500. The Ninth Circuit also noted that, in support of habeas relief, Petitioner proffered three declarants who stated that Fernandez bragged, on multiple occasions, that he was the shooter and that they would have testified at trial if asked to do so. *Id.* Noting that Fernandez's statements "likely would have been admitted as statements against interest" under Cal. Evid. Code § 1230, the Ninth Circuit concluded that, "[h]ad the jury heard evidence of Fernandez's repeated boasts, there is at least a reasonable probability that the jury would not have found that Petitioner was the shooter, and that the result of the proceeding would have been different." *Id.* Because Petitioner raised a "colorable claim" of ineffective assistance of counsel, the Ninth Circuit remanded to this Court for an evidentiary hearing. *Id.* at 501.[4]

**2. This Court's Evidentiary Hearings and Parties' Post-Hearing Briefings**

Over the course of three evidentiary hearings, the Court heard testimony from: Petitioner; Petitioner's trial counsel (Antonio Reyes); Petitioner's mother (Lefuoio Landeros); Angel Astorga, Alejandro Serrano, and Juan Barajas (three friends or family members of Adan Fernandez who testified generally to statements Fernandez made to them about shooting at a police officer); and Patrick Rossiter (an assistant to Petitioner's habeas counsel). (Docs. 109, 137, 144). Their testimony will be cited below as relevant.

The parties also filed post-hearing briefs. (Docs. 156-58). All of the testimony elicited during the evidentiary hearings and all of the parties' post-hearing briefing concern a single claim presented in the Petition: that trial counsel's failure to investigate and introduce evidence that

[4] Although the Ninth Circuit also concluded that Petitioner presented a colorable claim of trial counsel's ineffective assistance on an additional theory (involving counsel's failure to pursue fingerprint evidence), Petitioner does not address that theory in his post-hearing briefing. Accordingly, that claim is deemed waived and/or abandoned. *See Honcharov v. Barr*, 924 F.3d 1293, 1295-96 & n.1 (9th Cir. 2019).

Adan Fernandez repeatedly admitted to shooting at a police officer violated Petitioner's rights to counsel under the Sixth Amendment to the U.S. Constitution.

## II. STANDARD FOR FEDERAL HABEAS RELIEF

A federal court's statutory authority to issue habeas corpus relief for persons in state custody is set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). AEDPA requires a state prisoner seeking federal habeas relief to first "exhaust[t] the remedies available in the courts of the State."[5] 28 U.S.C. § 2254(b)(1)(A). Where the state court adjudicates the claim on the merits, a petitioner is not entitled to habeas relief unless the adjudication (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Deciding whether a state court's decision 'involved' an unreasonable application of federal law or was 'based on' an unreasonable determination of the facts requires the federal habeas court to 'train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018). When the state court's decision "does not come accompanied with [its] reasons" for the decision, a federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." *Id.* However, when there is no reasoned decision to "look through," it may be presumed—in "the absence of any indication or state-law procedural principles to the contrary"—that the state court adjudicated the claim on the merits and the petitioner must show "there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011).

Under 2254(d)(1), a decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially

[5] The statute allows for limited exceptions inapplicable here. *See* 28 U.S.C. § 2254(b)(1)(B).

indistinguishable facts. *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington*, 62 U.S. at 101. The petitioner must show that the state court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Under § 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). "State courts are accorded substantial deference. If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination." *Marks v. Davis*, 106 F.4th 941, 949 (9th Cir. 2024) (citations and quotation marks omitted) (quoting *Brumfield v. Cain*, 576 U.S. 305, 314 (2015)).

## III. ANALYSIS

The Court previously found that Petitioner's ineffective assistance of counsel claim was raised on habeas review in the Tulare County Superior Court (Doc. 34 at 9), and Respondent did not then and does not now in his post-hearing briefing dispute that Petitioner has exhausted the claim.

In the last reasoned decision, the superior court denied Petitioner's claims on the merits by finding that Petitioner failed to show a prima facie case for relief, including as to Petitioner's ineffective assistance of counsel claim, stating that he "failed to establish the basic requirements for success." (LD 19). *See Phelps v. Alameida*, 569 F.3d 1120, 1126 n.8 (9th Cir. 2009) (state

court denial of habeas petition upon finding that it failed to make a prima facie case "is a denial on the merits of the claim"). The California Court of Appeal and California Supreme Court denied the petitions without comment or citation to authority. Consequently, the Court looks through the unexplained decisions to the superior court ruling to determine whether it is contrary to, or based on an unreasonable application of, Supreme Court precedent or based on an unreasonable determination of the facts. *See Howard v. Clark*, 608 F.3d 563, 568 (9th Cir. 2010).

No state court held a hearing and found facts with respect to Petitioner's ineffective assistance of counsel claim. Thus, whereas ordinarily the state court's factual findings are entitled to a "presumption of correctness" under AEDPA (*see supra*), such presumption does not apply where, as here, the fact-finding process was fundamentally flawed. *See Velasquez*, 824 Fed. Appx. at 499 (citing *Hurles v. Ryan*, 752 F.3d 768, 790 (9th Cir. 2014)). Therefore, the ordinary rule that state factual findings are presumed correct is disregarded and this Court undertakes a de novo review with the benefit of evidence from the three evidentiary hearings undertaken in compliance with the Ninth Circuit's mandate. *See Hurles*, 752 F.3d at 778.

### A. Ineffective Assistance of Counsel – Failure to Investigate

#### 1. Background

According to evidence developed during the evidentiary hearings, following his arrest for the robbery and shooting, Petitioner admitted to police that he was involved in a robbery but denied being the shooter. (Doc. 125 at 11-2, Transcript of 10/4/2024 Hearing ["10/4/2024 Hrng. Tr."]). According to Petitioner, at some point prior to trial, he told his trial counsel, Antonio Reyes, that Adan Fernandez was the actual shooter and had passed away. *Id*. at 81. Reyes recalled that Petitioner identified someone whom he believed was Fernandez that may have been involved in the crime, but not necessarily as the shooter. *Id.* at 12-13; 34. Petitioner's mother, Lefuoio Landeros, also testified she asked Reyes to investigate whether Fernandez was the shooter because Fernandez's friends had said that Fernandez told them that he shot at police. *Id.* at 72. She specifically asked Reyes to speak to Fernandez's parents to determine whether they had information about Petitioner and Fernandez being together before the crime. *Id.* at 71. According to Landeros, Reyes informed her that he already had spoken to the parents. *Id.* For his

part, Reyes recalled speaking with Landeros but did not recall whether she had implicated Fernandez as the shooter. *Id.* at 13-14. He also testified that he spoke with Fernandez's father who told him Petitioner and Fernandez were together for several hours at the father's home the evening of the robbery and the shooting. *Id.* at 15-16.

Reyes conceded that, during his deposition in December 2022, he testified that he did not investigate whether Fernandez was the shooter. *Id.* at 14. Thus, he did not attempt to identify and investigate Fernandez's friends, obtain a photograph of Fernandez, or look at Fernandez's obituary. *Id.* at 20-21.[6]

Reyes had been a practicing criminal defense lawyer in Tulare County for approximately 30 years at the time of Petitioner's trial and had handled approximately 30 felony trials, including five or six attempted murder cases and at least the same number of murder cases. *Id.* at 23-24. He considered juries in Tulare county to be "pro-law enforcement." *Id.* at 24. Reyes's trial strategy was informed by the fact the Petitioner had admitted his involvement in the robbery, adamantly refused to testify at trial for fear of being required to identify the other participants to the crime, and directed Reyes to not investigate fingerprint evidence to avoid implicating any co-participants. *Id*. at 27, 32-33. Thus, at trial, Reyes conceded Petitioner's participation in the robberies and focused the jury on deciding whether the shooter harbored murderous intent. Reyes argued that the fired bullets impacted the bottom of Officer Rich's patrol car, instead of the windshield, suggesting the shooter's intent was merely to thwart the officer's pursuit. Reyes believed this trial strategy offered the benefit of avoiding a challenge to Officer Rich's eyewitness identification of Petitioner as the shooter, thereby maintaining credibility with the jury. *Id.* at 36-38. Reyes largely followed this strategy in closing arguments to the jury. *See* (LD 6 at 52-53; LD 9 at 401, 403-07, 412).

In the state court habeas proceedings, Petitioner submitted declarations from purported witnesses who were friends or relatives of Fernandez and who claimed that Fernandez had

---

[6] In his post-hearing briefing, Petitioner characterizes his testimony during the evidentiary hearing as establishing that Reyes told him Fernandez was not going to help in trial because he had passed away. (Doc. 156 at 8) (citing 10/4/2024 Hrng. Tr. 84). However, the testimony at the evidentiary hearing does not establish this as a fact; further, Reyes had no recollection of telling Petitioner this (*see id.* at 21).

admitted to them on multiple occasions that he had been involved in a robbery, was chased by police, and shot at a police officer. (LD 22, Exs. J-L.); *see* Doc. 2-2 at Exs. J-L. Each stated that counsel had not contacted them but they would have testified had they been called. *Id.* All three of these declarants – Angel Astorga, Alejandro Serrano, and Juan Barajas – testified consistently with these declarations at the evidentiary hearings held in this habeas proceeding. (10/4/2024 Hrng. Tr. at 48-52; Doc. 150, Transcript of 2/19/2025 Hearing, at 8-10; Doc. 151, Transcript of 4/30/2025 Hearing, at 13-21, 25).

**2. Governing Legal Standard**

A claim of ineffective assistance of counsel is evaluated under the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984). Under this test, "a petitioner must prove: (1) that his counsel's performance fell below an objective standard of reasonableness (the deficient performance prong); and (2) that there is a reasonable probability of a more favorable outcome if counsel performed effectively (the prejudice prong)." *Rogers v. Dzurenda*, 25 F.4th 1171, 1181 (9th Cir. 2022) (citing *Strickland*, 466 U.S. at 687-88, 694).

"Counsel is deficient where he makes errors so serious as to deny the defendant the 'counsel' guaranteed by the Sixth Amendment—where he fails to offer 'reasonably competent' assistance as measured by 'prevailing professional norms.'" *Bemore v. Chappell*, 788 F.3d 1151, 1162 (9th Cir. 2015) (quoting *Strickland*, 466 U.S. at 687-88). "[T]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' and '[j]udicial scrutiny of counsel's performance must be highly deferential.'" *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 689). Among other things, "defense counsel must, 'at a minimum, *conduct a reasonable investigation* enabling him to make informed decisions about how best to represent his client.'" *Id*. (quoting *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994)) (emphasis in original). "A defense attorney's failure to consider alternate defenses constitutes deficient performance when the attorney 'neither conduct[s] a reasonable investigation nor ma[kes] a showing of strategic reasons for failing to do so.'" *Id.* (quoting *Sanders*, 21 F.3d at 1456) (alterations in original).

"The prejudice prong focuses on the question whether counsel's deficient performance

renders the result of the trial unreliable or the proceeding fundamentally unfair." *Rogers*, 25 F.4th at 1182. In making this assessment, a reviewing court must "compare the evidence that actually was presented to the jury with the evidence that might have been presented had counsel acted differently." *Hernandez v. Chappell*, 923 F.3d 544, 551 (9th Cir. 2019).

**3. Deficient Performance**

Although Respondent acknowledges that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary" (Doc. 157 at 15), he argues that trial counsel (here, Reyes) pursued an objectively reasonable defense strategy. In support, Respondent points to the "challenging situation" trial counsel faced given Petitioner's admitted involvement in the robberies and in driving the getaway car, his "adamant" refusal to testify, and resistance to trial counsel investigating fingerprint evidence to avoid the possible discovery of evidence implicating other participants. He notes that trial counsel anticipated the prosecution would pursue an aider and abettor theory of liability that, Respondent contends, was conclusively established through Petitioner's post-arrest admissions to law enforcement officers regarding his participation in the robbery. *Id.* at 16. He argues essentially that the strategy trial counsel selected – to focus almost exclusively on the state of mind of the shooter – was a reasonable option taking all of these considerations into account and, further, to avoid challenging a law enforcement officer's eyewitness identification of Petitioner as the shooter, which Respondent contends would have been particularly risky where the jury was expected to be pro-law enforcement.

The problem with all of these arguments, however, is that trial counsel made strategic decisions about the defense of the case without having undertaken the necessary investigation to inform those decisions. It is true that "once counsel reasonably elects to pursue one defense theory, 'the need for further investigation [of the other theory] may be considerably diminished or eliminated altogether.'" *Turk v. White*, 116 F.3d 1264, 1267 (9th Cir. 1997) (quoting *Strickland*, 466 U.S. at 691). However, trial counsel cannot preselect that strategy without first undertaking the requisite investigation. *See Bemore v. Chappell*, 788 F.3d 1151, 1166-67 (9th Cir. 2015) (admonishing that trial counsel maintains a "duty to investigate" available defenses before

selecting a defense because, "[t]hat way, he could decide in an informed manner which defense was preferable"). Thus, "an attorney's decision to forgo a particular line of defense is not necessarily reasonable simply because it is based on '*some* information' obtained in a limited investigation." *Howard v. Clark*, 608 F.3d 563, 570 (9th Cir. 2010) (quoting *Wiggins v. Smith*, 539 U.S. 510, 527 (2003)) (emphasis in original). Instead, "[i]n assessing the reasonableness of an attorney's investigation ... a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Id*. (quoting *Wiggins*, 539 U.S. at 527) (alteration in original).

Here, Petitioner's trial counsel testified that, consistent with his statements to law enforcement, Petitioner told trial counsel that he was not the shooter (10/4/2024 Hrng. Tr. at 12, 25) and identified Fernandez as someone who was involved in the crime (see *id*. at 12-13, 34; Doc. 157 at 11). Trial counsel conceded that he could not rule out that Petitioner identified Fernandez as the shooter and that his trial file included information permitting an inference that Fernandez was the shooter. (10/4/2024 Hrng. Tr. at 13, 30, 34). Trial counsel also was aware that Petitioner and Fernandez had been together for several hours the evening of the robbery and shooting and he could not rule out that Petitioner's mother had expressed her belief to him that Fernandez was the shooter. *Id.* at 13, 15-16. Under similar circumstances, the Ninth Circuit has found trial counsels' performance deficient under *Strickland* where they, too, failed to undertake adequate investigation to inform trial strategy.

For instance, in *Lord v. Wood*, trial counsel strategically elected to not call three witnesses at trial, all of whom repeatedly gave pretrial statements that they had seen the murder victim with the defendant after the time of the victim's murder, because counsel did not believe them "and had been concerned that putting them on the stand would have harmed their own credibility with the jury." 184 F.3d 1083, 1089 (9th Cir. 1999). The Ninth Circuit found that nothing in the law enforcement reports documenting the witnesses' statements suggested that their stories "were unworthy of belief." *Id*. at 1089. The Ninth Circuit also found that counsel's "cursory investigation" of the known possible alibi witnesses, coupled with counsel's decision to not present them at trial, constituted deficient performance that was prejudicial to the petitioner's

defense. *Id*. at 1093. The Court explained that it would "be inclined to defer to counsel's judgment if they had made the decision not to present the three witnesses after interviewing them in person." *Id*. at 1095.

Similarly, in *Sanders*, although trial counsel was aware of an alibi witness who confessed to being the shooter, he strategically chose not to call him at trial. The Ninth Circuit concluded that "[counsel] failed to conduct even the minimal investigation that would have enabled him to come to an informed decision about what defense to offer and whether to call" the alibi witness to testify at trial. *Sanders*, 21 F.3d at 1056. The Ninth Circuit observed that describing counsel's conduct "as 'strategic' strips that term of all substance" and concluded that counsel rendered ineffective assistance in part because he made no effort "to ascertain whether [the alibi witness] had confessed these [] facts [of having been the shooter] to other people whose testimony might be used in the event [the alibi witness] ultimately decided to invoke the Fifth Amendment." *Id.* at 1056-57.

In the face of the evidence cited above that Fernandez, no Petitioner, was the shooter, Respondent argues that Petitioner's testimony that he told trial counsel Fernandez was the shooter is not credible and should be discounted/disregarded. In support of this argument, Respondent notes that trial counsel's file contained no notes that Petitioner ever identified Fernandez as the shooter and, in any event, trial counsel testified that he would have "dealt with it" had Petitioner ever identified Fernandez as the shooter. But trial counsel also testified that he had a practice of not documenting his clients' statements to him in his file. (10/4/2024 Hrng. Tr. at 39). He also conceded that his trial file contained "inferences" that Fernandez was the shooter. *Id.* at 34.

Respondent advances other arguments about Petitioner's lack of credibility (Doc. 157 at 19-20) that the undersigned has considered and rejects because they do not substantially undermine that trial counsel was aware of sufficient facts to implicate a duty to make reasonable investigation to inform his defense strategy. Even if the Court were to discount Petitioner's reported identification to trial counsel of Fernandez as the shooter, it is undisputed that trial counsel at least was aware that Fernandez allegedly participated in the crime, acknowledges inferences in his trial file that Fernandez in fact was the shooter, and was aware that Fernandez

and Petitioner were together for several hours during the evening of the crime. Under *Lord* and *Sanders*, trial counsel's failure to undertake reasonable investigation of Fernandez in light of these facts fails under *Strickland*.

Respondent also argues that trial counsel's performance – as relevant here, his decision to forgo investigating and possibly introducing evidence of third-party liability in favor of an alternative strategy – was reasonable because introduction of the exculpatory testimony would not have shielded Petitioner from liability for the shooting as an aider and abettor. Thus, under California law, a person may be guilty of attempted murder as an aider and abettor, even if the person did not commit the act constituting the offense, so long as he acted with the intent or purpose of committing or facilitating commission of the offense. *People v. McCoy*, 25 Cal. 4th 1111, 1118 (2001); *see People v. Ervine*, 47 Cal. 4th 745, 785 (2009) (noting that attempted murder requires a showing of "specific intent to kill"). Respondent appears to contend that Petitioner would have been exposed to liability for the attempted murder, even if evidence had been introduced suggesting he was not the shooter, because "he had robbed the patrons at the bar with his accomplices, fled with them, *stopped the car so the shooter could fire* at Officer Rich, and drove the group away." (Doc. 157 at 16) (emphasis added).

Respondent's aiding and abetting argument is meritless. First, evidence that Petitioner participated in the robbery, fled with co-conspirators, and drove them away *after* the shooting does not persuasively suggest Petitioner shared in the shooter's murderous intent in a manner that would make him culpable as an aider and abettor. *See People v. Cooper*, 53 Cal. 3d 1158, 1164-65 (1991) (holding that the aider and abettor's requisite intent must be formed before or during the commission of the offense). Second, there is no record evidence to support Respondent's contention that Petitioner (as the getaway car driver) stopped the car "so the shooter could fire" at the pursuing officer as might implicate Petitioner sharing the shooter's intent to murder.

Respondent separately argues that trial counsel's performance could not have been deficient because Petitioner never identified to him or his investigator witnesses who eventually came forward and attested that Fernandez told them he shot police. In Respondent's view, trial counsel is not required under *Strickland* to engage in a "wild goose chase" in discharging his

obligation to reasonably perform his duty to investigate. (Doc. 157 at 22). To be sure, the key Ninth Circuit decisions cited herein that address the duty to investigate are distinguishable in this regard because, in those cases, trial counsel made strategic decisions to either not investigate or not call at trial *known* witnesses. *See Lord*, 184 F.3d at 1089; *Sanders*, 21 F.3d at 1446-47; *see also Rios*, 299 F.3d at 806; *Avila v. Galarza*, 297 F.3d 911, 919-920 (9th Cir. 2022). Here, as Respondent correctly notes, there is no evidence to suggest that trial counsel was familiar with either Astorga, Serrano, or Barajas, and the fact that they could exculpate Petitioner based on Fernandez's admissions to them. And as a general principle, the undersigned agrees with Respondent that, to satisfy *Strickland*, trial counsel need not "scour the globe on the off chance something" would turn up in Petitioner's favor. (Doc. 157 at 22) (quoting *Rompilla v. Beard*, 545 U.S. 374, 383 (2005)). But even the case Respondent relies upon (*Rompilla*) makes the important distinction that is dispositive of Respondent's argument here: "reasonably diligent counsel may draw a line when they have *good reason* to think further investigation would be a waste." *Id*. (emphasis added). Here, trial counsel could not have "good reason" to think further investigation would be a waste because he conducted *no investigation* into Fernandez's involvement in the crime – including as the shooter – to inform any decision that further investigation was unwarranted. *Cf. Strickland*, 466 U.S. at 690 (noting that "strategic choices made *after* thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.") (emphasis added).

For these reasons, the undersigned finds that trial counsel failed in his duty to conduct a reasonable investigation such that his performance was deficient. This is consistent with the formerly assigned magistrate judge's finding – even without the benefit of the now-available additional testimony confirming trial counsel's knowledge of facts warranting further investigation (*see supra*) – that "a reasonable attorney would have conducted at least some investigation into whether someone else had admitted to the crime" given Petitioner's reported statement to his trial counsel that he was not the shooter. (Doc. 34 at 16-17).[7] As noted above,

[7] Although her findings and recommendations ultimately were rejected by the Ninth Circuit, there is nothing in the Ninth Circuit's opinion that suggests the panel would disagree with the assessment noted above.

Respondent's contention that Petitioner never identified Fernandez's friends who may have information about Fernandez's involvement in the shooting (Doc. 157 at 5) is not dispositive, and in any event, the undersigned also agrees with the formerly assigned magistrate judge's assessment that even "[m]inimal investigation into Fernandez would surely have revealed these individuals who were immediate friends and relatives of Fernandez." (Doc. 34 at 17).

**4. Prejudice**

Respondent argues that, even if trial counsel's performance was constitutionally deficient, Petitioner has not satisfied *Strickland*'s separate requirement that he demonstrates such deficient performance prejudiced him. Specifically, Respondent argues that the statements of Astorga, Serrano, and Barajas, implicating Fernandez as the shooter, are not admissible in this habeas proceeding and would not be admissible at trial, and even if they were admissible, reasonably competent trial counsel would not have pursued a trial strategy premised on witnesses identifying a deceased co-conspirator as the shooter. Respondent separately argues that it is not reasonably probable a jury would have reached a verdict more favorable to Petitioner had trial counsel pursued any such trial strategy.

Petitioner bears the burden of establishing that "there is a reasonable probability that counsel's failure to investigate, and to locate and produce witnesses, affected the outcome of the proceeding." *Brown v. Myers*, 137 F.3d 1154, 1157 (9th Cir. 1998). Petitioner "does not have to show by a preponderance of the evidence that the result in his case would have been different but for counsel's errors"; rather, he must demonstrate "a probability sufficient to undermine confidence in the outcome" of the trial. *Id*. (quoting *Strickland,* 466 U.S. at 694).

**(1) The Exculpating Witnesses' Statements are Admissible**

Under Rule 804(b)(3), three requirements must be met before evidence is admissible as a declaration against penal interest: (1) the declarant must be unavailable, (2) the statement must tend to subject the declarant to criminal liability such that a reasonable person in the declarant's position would not have made the statement unless he believed it to be true, and (3) there must be corroborating circumstances which indicate the trustworthiness of the statement. *United States v. Layton*, 720 F.2d 548, 559 (9th Cir. 1983)

(overruled on other grounds, *United States v. W.R. Grace*, 526 F.3d 499, 506 (9th Cir. 2008)). The "against interest" requirement of Rule 804(b)(3) applies not only to confessions of criminal responsibility, but also to remarks that "tend to subject" the declarant to criminal liability. *Id*. at 559-60. "Nonetheless, each statement must (1) solidly inculpate the declarant and (2) be one that a reasonable person in the declarant's position would not have made unless it were true." *United States v. Magana-Olvera*, 917 F.2d 401, 407 (9th Cir. 1990).

Statements against penal interest are admissible under California law if they satisfy a test similar to the Rule 804 test. "Under California law, out-of-court statements are admissible in evidence if (1) the declarant is unavailable, and (2) his statements 'so far subjected him to the risk of civil or criminal liability ... that a reasonable man in his position would not have made the statement unless he believed it to be true.'" *Luna v. Cambra*, 306 F.3d 954, 962 (9th Cir. 2002) (quoting Cal. Evid. Code § 1230), *amended by* 311 F.3d 928 (9th Cir. 2002). "The declaration must also be 'sufficiently reliable to warrant admission despite its hearsay character." *Id*. at 962-63 (quoting *People v. Duarte*, 24 Cal.4th 603 (2000)). "To determine whether the declaration passes the required threshold of trustworthiness, a trial court may take into account not just the words but the circumstances under which they were uttered, the possible motivation of the declarant, and the declarant's relationship to the defendant." *Id*. at 963 (quoting *People v. Cudjo*, 6 Cal.4th 585 (1994) (per curiam)).

Here, Respondent does not dispute that Fernandez is unavailable and only obliquely challenges that his statements about being involved in a robbery, chased by police, and shooting at a police officer solidly incriminate him given that two of the three witnesses to those statements (Astorga and Serrano) testified that Fernandez appeared to be bragging when he made the self-incriminating statements (Doc. 157 at 27). *Cf. Cudjo*, 6 Cal.4th at 607 ("It is ... not ... reasonably disputable that a statement confessing to a killing ... subjects the declarant to a risk of criminal liability and therefore on its face is against the alleged declarant's penal interest"). Chiefly, Respondent challenges that Fernandez's statements to the three witnesses implicating Fernandez as the shooter are not supported by corroborating circumstances of trustworthiness. (Doc. 157 at 25-27).

First, contrary to Respondent's argument, the close relationship between the three witnesses and Fernandez does not necessarily undermine the trustworthiness of Fernandez's statements. Respondent's reliance on *United States v. Gadson* (9th Cir.) and *United States v. Bobo* (8th Cir.) for such a proposition is inapt because, in those cases, the district court permissibly found a lack of corroborating circumstances indicating trustworthiness of the hearsay statement sought to be introduced under Rule 804 where the declarant and the defendant (the party to benefit from the declarant's statement) were *familial relations* (as brothers). Here, Fernandez's statements exculpating Petitioner do not present the same basis as in *Gadson* and *Bobo* to question the statements' trustworthiness as Fernandez and Petitioner were not family members – though Petitioner testified that the two "were like family," in fact, they had been associated as friends for only two years prior to the robbery and shooting (10/4/2024 Hrng. Tr. at 89-90). *Cf. United States v. Paguio*, 114 F.3d 928, 933 (9th Cir. 1997) (noting that "[a] motive of love might, however, induce a reasonable father to make a false self-inculpatory statement in order to save his son," but affirming admission of statement against penal interest due to other corroborating evidence).

Even if an association in close friendship warrants scrutiny of the trustworthiness of one friend's statements against penal interest in favor of another friend, *Gadson* and *Bobo* are distinguishable for the additional reason that the district courts in those cases relied on other indicators of a lack of trustworthiness, including that the declarants had made contradictory statements to others about the material facts conveyed in the hearsay statements at issue. *See Gadson*, 763 F.3d at 1200; *Bobo*, 994 F.2d at 528. Here, in contrast, there is no evidence that Fernandez made contradictory statements to others about his involvement in the shooting of police.

Second, there are other corroborating circumstances supporting the reliability of Fernandez's statements that he shot at police after the robbery. To begin with, there is strong evidence that Fernandez and Petitioner, in fact, were co-conspirators in the robbery and shooting. Two witnesses informed trial counsel or his investigator that Fernandez and Petitioner were together for several hours on the evening of the robberies and left Fernandez's home together

hours before the robbery occurred. (10/4/2024 Hrng. Tr. at 16-20). Petitioner confessed to being involved in the robberies and driving the getaway car but repeatedly denied being the shooter. Witnesses to the robberies stated that two people fled in the getaway car. Three different witnesses testified during the habeas evidentiary hearings that Fernandez admitted being the shooter on multiple occasions, all occurring near in time (within approximately six weeks of) to the shooting. *See United States v. Johnson*, 767 F.3d 815, 825 (9th Cir. 2014) (timing of co-conspirator's incriminating statements made in confidence to an associate shortly after the crime "tend[ed] to establish [the] statements are sufficiently trustworthy" under Rule 804(b)(3)).

While Respondent is correct to note that Fernandez's statements are not corroborated by physical evidence, there likewise is no physical evidence contradicting Fernandez's confessions to the shooting, and, thus, the lack of corroborating physical evidence is not dispositive given the other factors favoring a finding of trustworthiness summarized above. In short, the undersigned finds that Fernandez's statements to Astorga, Serrano, and Barajas are adequately corroborated clearly indicating their trustworthiness. Thus, they are admissible as statements against penal interest under both Rule 804 and California law.

**(2) Reasonable Counsel Would Have Presented the Witnesses at Trial and There is a Reasonable Probability That the Outcome at Trial Would Have Been Different**

Respondent argues that Petitioner cannot demonstrate that he was prejudiced by trial counsel's failure to investigate because, even if trial counsel had obtained Fernandez's statements admitting to being the shooter, reasonable counsel would not have pursued a defense strategy anchored by testimony that a deceased co-conspirator confessed to the crime. In support, Respondent notes that "the test for prejudice is whether the noninvestigated evidence was powerful enough to establish a probability that a reasonable attorney would decide to present it." (Doc. 157 at 28) (quoting *Mickey v. Ayers*, 606 F.3d 1223, 1236-37 (9th Cir. 2010)). In Respondent's view, presenting a defense blaming a deceased co-conspirator would have been "fraught with peril" because it would elicit suspicion from and alienate the jury. *Id.* at 28-29. Respondent also suggests that jurors would question why Petitioner had steadfastly refused to

identify Fernandez while he was alive but been willing to present evidence of Fernandez's involvement at trial following his death. Respondent separately notes the trial risk inherent in relying on the hearsay statements without any physical evidence corroborating the statements or proof that Fernandez was even at the robbery or that his admission of shooting at police was a reference to the shooting at issue in the case.

In *Mickey*, the petitioner raised an ineffective assistance of counsel claim based on his counsel's failure to present a mental health defense during the guilt phase of trial. In addition to finding that petitioner failed to demonstrate trial counsel's performance was deficient under *Strickland*, the Ninth Circuit held that any failure by trial counsel to raise the mental health defense did not prejudice the petitioner, largely because the evidence of his guilt "was overwhelming" and, separately, because his claims to self-defense conflicted with the physical evidence and his own statements. *Mickey*, 606 F.3d at 1239-40. Accord *Rios*, 299 F.3d at 808-09 (holding that prejudice based on a failure to investigate witnesses "must be considered in light of the strength of the government's case") (citation and internal quotations omitted).

This case is not like *Mickey* and Respondent's contention that a reasonable attorney would not have presented the exculpatory testimony of Astorga, Serrano, and Barajas, is unpersuasive. Where, as here, the prosecution case was based largely on testimony from a single eyewitness, the Ninth Circuit has had "no trouble concluding that the failure to call [an exculpatory witness]" undermines confidence in the outcome of the trial and results in prejudice. *Allen v. LaMarque*, 50 Fed. Appx. 346, 347 (9th Cir. 2002) (citing *Rios*, 299 F.3d at 809-813 & *Avila*, 297 F.3d at 923-24). Thus, in *Rios*, the Ninth Circuit, in concluding that trial counsel's failure to investigate was prejudicial where five eyewitnesses attested during habeas proceedings that the petitioner there was not the shooter, relied on "the nature and the number of the witnesses willing to testify on [the petitioner's] behalf, and the highly exculpatory nature of their testimony." *Rios*, 299 F.3d at 800. The Ninth Circuit concluded that "[a] reasonable defense attorney with ample exculpatory testimony from eyewitnesses would almost certainly have presented a misidentification defense and not an unconsciousness defense or a combination of the two." *Id.* at 811 n.22. Similarly, in *Avila*, the Ninth Circuit found trial counsel's deficient performance prejudicial where he failed to

investigate and identify four witnesses who could have testified that petitioner was not the shooter. *Avila*, 297 F.3d at 924 (relying in part on *Lord*, 184 F.3d at 1096).

And that principle is particularly apt here, where the identification of the shooter given by the single eyewitness – albeit, a police officer – was subject to reasonable challenge. First, Officer Rich testified at trial that, immediately after the getaway vehicle stopped abruptly during the chase, a suspect emerged from the sunroof with a handgun and, within "a couple of seconds," fired five or six shots toward Officer Rich, at least two of which he heard impact his vehicle. (LD 8, Transcript of 6/9/2011 Trial ["Trial. Tr."], at 277-78). Officer Rich testified that he was afraid, upset, and shaking, prompting him to immediately turn to the left and accelerate into a U-turn as the getaway car accelerated away. *Id*. at 278-79, 308. Thus, Officer Rich's testimony about his identification of Petitioner was vulnerable to challenge given that the shooting occurred at night, began and ended relatively quickly, and the eyewitness (Officer Rich) was the alleged target of the shooting and under the stress of the shooting during the brief opportunity he had to observe the shooter. *See Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) (noting that factors informing the reliability of eyewitness identification testimony "include the opportunity of the witness to view the criminal at the time of the crime [and] the witness' degree of attention").

Second, Officer Rich's identification of Petitioner was vulnerable given the circumstances leading up to his eventual selection of Petitioner from a photo lineup. Specifically, after Officer Rich departed the scene of the shooting and returned to the stationhouse, he heard over the radio that a suspect had been detained and/or arrested. Trial Tr. at 305. Officer Rich went outside, saw the suspect (Petitioner) handcuffed from approximately 20 to 25 yards away, and watched the suspect (Petitioner) enter the stationhouse. *Id*. at 306. Officer Rich conceded that it was not until after he first saw Petitioner handcuffed that he identified Petitioner from a photo lineup. *Id*. at 306-07, 309-10. Even if the form of Officer Rich's selection of Petitioner from a photo lineup was not rendered unnecessarily suggestive by Officer Rich's earlier observation of Petitioner in handcuffs so as to make the identification inadmissible, the identification was vulnerable to challenge because it came only after Officer Rich already had seen Petitioner detained as a suspect.

Petitioner's refusal to identify the shooter to police and his insistence that trial counsel not pursue fingerprint evidence almost certainly undermined his ability to defend against the charges. But these inherent weaknesses in Petitioner's defense case do not transform the prosecution's case into one that fairly can be characterized as "overwhelming" when it was supported largely by a single eyewitness identification of Petitioner as the shooter.

In support of the argument that no reasonable attorney would have presented the testimony of the exculpatory witnesses, Respondent separately contends that introduction of that evidence would not have absolved Petitioner of liability for the attempted murder under an aiding-and-abetting theory. This is unconvincing for the same reasons the undersigned has found above that the mere possibility a jury would convict Petitioner as an aider and abettor does not render trial counsel's decision to forgo investigating third-party liability evidence objectively reasonable, where there is no compelling basis to conclude that the evidence established beyond a reasonable doubt that Petitioner shared in the shooter's murderous intent prior to or during the shooting.

In sum, having found that Petitioner's trial counsel performed deficiently and his deficient performance prejudiced Petitioner, the undersigned concludes that Petitioner was deprived of his Sixth Amendment right to effective assistance of counsel and is entitled to habeas relief.

## IV. RECOMMENDATION

For the reasons set forth above, it is **RECOMMENDED** that the presiding district judge:

1. GRANT the Petition for Writ of Habeas Corpus (Doc. 1) as to Ground IX (*id*. at 8-9);
2. ORDER Respondent to release Petitioner within ten (10) days after the judgment in the instant case is filed, subject to appropriate release conditions, unless the State elects to retry Petitioner (*see Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013) ("a court may issue a conditional writ that requires the state to release a petitioner unless it takes some other remedial action, such as retrial of the petitioner.") (citing *Herrera v. Collins*, 506 U.S. 390, 403 (1993)); and
3. ORDER Respondent to report to this Court, within ten (10) days after the judgment in the instant case is filed, whether Petitioner was released or will be retried.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. **Within 21 days** of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).

A party's failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **August 18, 2026**

UNITED STATES MAGISTRATE JUDGE